UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL T. SCOTT,

         Plaintiff,         Case # 17-CV-6311-FPG

 v.                   DECISION AND ORDER

CITY OF ROCHESTER, et al.,

         Defendants.

---

**INTRODUCTION**

*Pro se* Plaintiff Michael T. Scott brings this civil-rights action against Defendants City of Rochester, Rochester Police Department, Patrick Giancursio, Samuel Giancursio, and William Wagner.[1] All of his claims arise from an officer-involved shooting that occurred in April 2016. Presently before the Court is Defendants' motion for summary judgment. ECF No. 13. Scott has not filed a formal opposition or submitted competing evidence, but he has filed letters requesting that the case proceed to trial. Having reviewed the parties' submissions, the Court concludes that, except in limited respects, Defendants are entitled to summary judgment. Accordingly, Defendants' motion is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE.

**LEGAL STANDARD**

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material

---

[1] Scott was originally represented by counsel, but his counsel withdrew while Defendants' motion was pending. ECF No. 27.

1

facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

**BACKGROUND**

Scott did not file an opposing statement of material facts in accordance with Local Rule of Civil Procedure 56(a)(2). This would therefore permit the Court to deem admitted the facts set forth in Defendants' statement. *See* Loc. R. Civ. P. 56(a)(2); *Coleman v. Hatfield*, No. 13-CV-6519, 2016 WL 2733522, at *1 (W.D.N.Y. May 10, 2016) ("[P]roceeding *pro se* does not relieve a litigant from the usual requirements of summary judgment."). But given Plaintiff's *pro se* status and the unusual circumstances of this case—*i.e.*, Plaintiff's attorney withdrawing in the midst of summary judgment briefing—the Court has examined the entire summary judgment record to determine whether genuine issues of material fact exist.

On the evening of April 22, 2016, Scott was involved in a domestic dispute between Shitara Mitchell (his wife) and Mitchell's son at her home. ECF No. 14-4 at 39. After Scott left, Mitchell called 911, reported the incident, and alleged that Scott had threatened to return and "shoot up [her] house." *Id.* Mitchell also reported that Scott had a gun that was not registered to him. *Id.* at 40. Police responded to Scott's home. While en route, Officer Samuel Giancursio called Mitchell,

2

who "was distraught about [Scott] retrieving a gun, which she knew he kept at [his home], and that he would follow through on his threat to shoot her and her son." ECF No. 13-6 at 2.

When Officers Patrick and Samuel Giancursio, along with other officers, arrived at Scott's home, they observed a minivan "barrel out of the driveway erratically and speed off." ECF No. 13-6 at 2. While Scott agrees that he was the driver of the minivan, he disputes that he was driving fast. ECF No. 14-4 at 141-42. In any case, as Scott turned off of his street, the marked police cruisers followed him and turned on their lights and sirens. *Id.* Scott claims to have driven slowly around the block with what he estimates were six to seven police cruisers in pursuit. *Id.* at 141. Scott returned to his home and pulled into his driveway. *Id.* at 142. Officers pulled in behind him.

The parties' versions of the subsequent events diverge more significantly at this point. Defendants claim that when Scott exited the minivan, he pointed a firearm in the direction of Officer Patrick Giancursio, who, fearing for his life, fired on Scott and struck him.[2] *See* ECF No. 13-5 at 3-4.

Scott presents a different narrative. He alleges that when he pulled back into his driveway, he immediately jumped out of the minivan. ECF No. 14-4 at 142. Although he had a firearm, he had tucked it into his waistband before he exited "so [he] could get out and run." *Id.* Even so, as he exited the minivan, an officer behind him noticed the firearm and yelled "he's got a gun." *Id.* The officer also yelled "Freeze" and "Stop," but Scott "took off" up his driveway, yelling "Don't shoot me." *Id.* at 142, 146. For a moment, Scott hid behind the front of the minivan, then he "lunge[d]" out of cover to continue into his backyard. *Id.* at 143. But as he did so, he was shot

---

[2] Officer Patrick Giancursio provides more specific details about his observations leading up to and during the shooting, but the Court need not delve into those facts for purposes of the present motion. *See* ECF No. 13-5 at 2-5.

twice. The first shot hit him in the back and "slowed [him] down," at which point he took the gun from his waistband and "tossed it." *Id.* Scott then reached into his pocket again "to grab the clip," and a second shot struck him and caused him to fall over.[3] *Id.* at 143-44. Scott was arrested after he was shot.

Subsequently, Scott was charged with one count of criminal possession of a weapon in the second degree under New York Penal Law § 265.03(1)(b), one count of criminal possession of a weapon in the second degree under § 265.03(3), and two counts of menacing a police officer under § 120.18. ECF No. 14-4 at 30, 33. In November 2016, Scott pleaded guilty to the charge of criminal possession of a weapon in the second degree under § 265.03(3) in full satisfaction of the other charges. *Id.* at 33.

Scott brought this action in May 2017. ECF No. 1. Principally, Scott alleges that Officer Patrick Giancursio's use of force was excessive because Scott had not pointed his gun "at any [police] officer." ECF No. 37 at 4. Construed liberally, he raises the following claims against the individual officers:[4]

1. false arrest/false imprisonment under 42 U.S.C. § 1983;

2. malicious prosecution under § 1983;

---

[3] It is not entirely clear from Scott's deposition testimony which officer he believes shot him. *See* ECF No. 14-4 at 142-43. But the complaint—which Scott affirmed was "true to [his] knowledge"—unequivocally alleges that Officer Patrick Giancursio shot him. ECF No. 1 at 4, 11. Given the ambiguity of his deposition testimony, the absence of any clarifying briefing by Scott, and Defendants' concession that Officer Patrick Giancursio shot Scott, the Court assumes that Scott alleges Officer Patrick Giancursio shot him. Furthermore, the Court's qualified-immunity analysis would not materially change even if Scott alleged that one of the other defendant officers shot him.

[4] In his complaint, Scott also alleged claims against "other unnamed officers." ECF No. 37 at 1, 2. Because Scott has not identified any other culpable officers after discovery, these claims fail as a matter of law. *See Centeno v. City of New York*, No. 16-CV-2393, 2019 WL 1382093, at *4 n.12 (S.D.N.Y. Mar. 27, 2019).

3. intentional infliction of emotional distress under § 1983;

4. excessive force under § 1983;

5. failure to intervene under § 1983;

6. battery under state law;

7. assault under state law; and

8. intentional infliction of emotional distress under state law.

*See generally* ECF No. 37.[5] Against the City of Rochester and the Rochester Police Department, Scott raises a claim for municipal liability under § 1983.

## DISCUSSION

Defendants move for summary judgment on all of Scott's claims. The Court examines the claims in turn.

### I. Claims against Officer Wagner and the Rochester Police Department

As an initial matter, the claims against Officer Wagner and the Rochester Police Department are not viable, and those defendants are entitled to summary judgment. As to Officer Wagner, Defendants argue that he was not involved in the shooting and did not arrive on scene "until after Mr. Scott was in custody." ECF No. 13-7 at 2. Scott fails to present any evidence to raise a genuine issue of material fact on this point. Because Officer Wagner was not involved in any of the underlying conduct, he cannot be held liable.

---

[5] Scott also references other civil-rights claims in passing that are not viable and merit only brief discussion. First, Scott cites the Eighth Amendment, but "Eighth Amendment claims of excessive force are normally limited to post-conviction situations." *Samuels v. Schultz*, No. 11-CV-6255, 2017 WL 1194376, at *4 (W.D.N.Y. Mar. 30, 2017). Second, Scott references Sections 1981 and 1985, both of which require that the defendant act with a discriminatory or racial animus. *See Younger v. City of New York*, 480 F. Supp. 2d 723, 733-34 (S.D.N.Y. 2007). Scott presents no admissible evidence to support such an inference in this case.

As for the Rochester Police Department, it does not exist "separate and apart from the municipality" and therefore cannot be sued separately from the City. *See Bradley v. Rochester Police Dep't*, No. 18-CV-6823, 2019 WL 3067281, at *1 (W.D.N.Y. July 12, 2019). Therefore, summary judgment is appropriate.

II. **§ 1983 Claims for False Arrest, False Imprisonment, Malicious Prosecution, and Intentional Infliction of Emotional Distress**

Scott's claims against Officers Patrick and Samuel Giancursio for false arrest, false imprisonment, and malicious prosecution under § 1983 fail because he pleaded guilty to criminal possession of a weapon in the second degree under Penal Law § 265.03(3), which criminalizes "simple possession" of a loaded firearm. *See People v. Brown*, 999 N.E.2d 1168, 1170 (N.Y. 2013). A claim for malicious prosecution requires a favorable termination of the criminal proceeding, which cannot be demonstrated where a plaintiff has pleaded guilty. *See Rivera v. City of Yonkers*, 470 F. Supp. 2d 402, 408 (S.D.N.Y. 2007). Likewise, an element of a false arrest or false imprisonment claim is an unprivileged confinement, and "[a] person who has been convicted of the crime for which he was arrested cannot state a claim for false arrest because his conviction establishes that his confinement was grounded on probable cause . . . [and] privileged." *Johnson v. Pugh*, No. 11-CV-385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013). Defendants are therefore entitled to summary judgment on these claims.

Scott also appears to raise a claim for intentional infliction of emotional distress under § 1983. *See* ECF No. 37 at 7-8. To the extent he does, Defendants are entitled to judgment as a matter of law, as intentional infliction of emotional distress "is not a cognizable constitutional claim." *Anderson v. City of New York*, No. 13 Civ. 1745, 2013 WL 6182675, at *3 & n.5 (S.D.N.Y. Nov. 19, 2013).

6

**III.    § 1983 Claim for Excessive Force**

The crux of Scott's complaint is his claim that Officer Patrick Giancursio used excessive force when he shot him.[6]  Defendants argue that summary judgment in Officer Patrick Giancursio's favor is appropriate because, *inter alia*, he is entitled to qualified immunity.  The Court agrees.

"The doctrine of qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017) (internal quotation marks and brackets omitted).  "To determine whether a defendant is entitled to qualified immunity, courts ask whether the facts shown 'make out a violation of a constitutional right' and 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" *Estate of Devine*, 676 F. App'x 61, 62 (2d Cir. 2017) (summary order) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  "The 'clearly established' inquiry does not ask how courts or lawyers might have understood the state of the law at the time of the challenged conduct." *Id.* at 62-63.  "Rather, the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 63 (internal quotation marks and brackets omitted).

As a general proposition, it is clearly established law that "the use of force highly likely to have deadly effects is unreasonable unless the officer [has] probable cause to believe that the suspect [poses] a significant threat of death or serious physical injury to the officer or to others."

---

[6] Although the complaint could be read to allege that all of the defendant officers are liable for shooting Scott, the Court, viewing the complaint both reasonably and liberally, construes it to allege that Officer Patrick Giancursio is liable for his alleged excessive force and that the remaining officers are liable for failing to intervene.  *See* ECF No. 37 at 5, 6, 8.

7

*Rasanen v. Doe*, 723 F.3d 325, 334 (2d Cir. 2013). But the Supreme Court has warned that the use of excessive force "is an area of the law in which the results depends very much on the facts of each case," and general statements of the law "do not by themselves create clearly established law" outside the obvious cases. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (internal quotation marks omitted) ("[I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness."). In other words, specificity "is especially important" in these sorts of cases. *Id.* at 1152. Thus, "[a]lthough a case does not need to be directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Estate of Priolo v. City of New York*, No. 15-CV-6080, 2019 WL 1428403, at *4 (E.D.N.Y. Mar. 29, 2019) (internal quotation marks omitted). "Precedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force, and thereby provide an officer notice that a specific use of force is unlawful . . . ." *Id.* (internal quotation marks omitted).

In this case, qualified immunity applies because existing precedent does not "squarely govern[] the specific facts at issue." *Kisela*, 138 S. Ct. at 1153 (internal quotation marks omitted). The record, as viewed in the light most favorable to Scott, shows the following: (1) officers believed that Scott had been involved in a violent domestic dispute between Mitchell and her son; (2) Mitchell reported that Scott had threatened to get a gun from his house and return to his wife's house to shoot her and her son; (3) when police arrived at Scott's home, they observed a minivan exiting the driveway, and the minivan did not stop when police turned on their lights and sirens; (4) when Scott returned to his home, he jumped out of his vehicle to run away; (5) police saw a

8

firearm in Scott's waistband as he exited the minivan, and one officer yelled "he's got a gun"; (6) Scott did not comply with police orders to "Freeze" and "Stop"; (7) Scott hid for cover behind the minivan, yelling "Don't shoot me"; (8) Scott lunged from cover to continue fleeing from police; and (9) he was shot twice—once while the gun was still in his waistband and once after he had "tossed" the gun but was reaching into his pocket.

As distilled, police were presented with a situation in which a person, who had reportedly engaged in a domestic violence incident and threatened to shoot his wife and her son, was actively fleeing from police, ignoring police commands to stop, and possessing a firearm. Instead of complying with police commands, the suspect hid for cover behind a minivan and then lunged out from behind the minivan to continue fleeing. Faced with a fleeing, armed, non-compliant suspect of domestic violence—who had just threatened to shoot his wife and her son—a plausible case could be made that Officer Patrick Giancursio reasonably believed that Scott posed a significant threat of death or serious physical injury to police or others. Even after he tossed the gun, Scott continued to flee and reached into his pocket. *Cf. Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) ("[I]f police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended."). Obviously, Scott disputes that he was *in fact* such a threat, but a potential suspect's subjective intentions do not govern the use-of-force analysis. That is why an officer's reasonable but mistaken belief about the threat a suspect poses can justify the use of force notwithstanding the suspect's subjective intent. *See Stephenson v. Doe*, 332 F.3d 68, 78-79 (2d Cir .2003).

Regardless, even if one could debate whether it was objectively reasonable for Officer Patrick Giancursio to use deadly force under these circumstances, existing precedent does not

9

place the constitutional question beyond debate. Indeed, after surveying the case law, one court held that "in most of the cases where a fleeing suspect possessed a firearm, courts have found officer shootings to be reasonable." *Ingraham v. City of Albuquerque*, No. 15-CV-308, 2015 WL 13651230, at *15 (D.N.M. Sept. 2, 2015) (collecting cases); *see, e.g.*, *Savage v. City of Memphis*, 620 F. App'x 425, 428 (6th Cir. 2015) (summary order) (deadly force was reasonable to stop fleeing suspect where police reasonably believed that he was armed because he "held one hand [at his waist] as he fled"); *Aswell v. Culpepper*, No. 12-CV-997, 2015 WL 1638094, at *5 (E.D. La. Apr. 13, 2015) (use of deadly force was objectively reasonable where suspect of armed robbery fled from police by car and then by foot, and one officer saw a firearm in the suspect's hands); *Davis v. McCarter*, 569 F. Supp. 2d 1201, 1203, 1206 (D. Kan. 2008) (objectively reasonable to use deadly force to apprehend fleeing, armed suspect where suspect had taken police on car chase; ran on foot through a residential neighborhood holding a gun; refused to stop at police commands; and officer shot suspect believing that he was attempting to "reach cover [and] then turn and fire at" officers); *Thompson v. Hubbard*, 257 F.3d 896, 899-900 (8th Cir. 2001) (use of deadly force reasonable where fleeing suspect turned toward the officer and reached into his waistband "as though reaching for a weapon"); *Ford v. Childers*, 855 F.2d 1271, 1272, 1275 (7th Cir. 1988) (use of deadly force reasonable where officer observed armed robbery suspect fleeing bank and suspect continued to flee despite police yelling "Halt").

These cases all have their own factual nuances, but at the very least they demonstrate that the constitutional question presented here—the reasonableness of using deadly force on an armed, fleeing, potentially dangerous suspect—is unsettled. Accordingly, this is "far from an obvious case in which any competent officer would have known that shooting" Scott would violate the

Fourth Amendment. *Kisela*, 138 S. Ct. at 1153; *accord Ingraham*, 2015 WL 13651230, at *15 (granting qualified immunity to officer "because the case law does not provide sufficient notice to officers regarding how a court would evaluate the seriousness and immediacy of a threat posed by [a] fleeing suspect who is armed with a firearm"). Officer Patrick Giancursio is entitled to qualified immunity and summary judgment on this claim.[7]

**IV.   § 1983 Claim for Failure to Intervene**

Scott appears to allege that the other officers at the scene are liable under § 1983 for their failure to intervene in the shooting. *See* ECF No. 37 at 5. To the extent he does, Defendants are entitled to judgment as a matter of law. First, Plaintiff's assertions do not reasonably permit the inference that any of the other officers had a meaningful opportunity to stop Officer Patrick Giancursio, who fired two shots in quick succession. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."); *see also Crockett v. City of New York*, No. 11-CV-4378, 2015 WL 5719737, at *7 (E.D.N.Y. Sept. 29, 2015) (failure-to-intervene theory failed against other officers where one officer fired "two shots" in "rapid succession and without notice or warning"). Second, the other officers would be entitled to qualified immunity given that, like the underlying use of force, the officers' duty to intervene under these circumstances was not clearly established. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) ("A

---

[7] Defendants also seek summary judgment on any claim pertaining to allegedly excessive force used after the shooting when Scott was being arrested. *See* ECF No. 13-1 at 24-25. The Court need not address that argument, as Scott's complaint does not allege any such excessive force and cannot be reasonably read to raise such a claim. *See generally* ECF No. 37. Moreover, Scott's deposition testimony confirms that officers used only *de minimis* force in effectuating his arrest after the shooting. *See* ECF No. 14-4 at 144-46; *see also Brooks v. Whiteford*, 384 F. Supp. 3d 365, 369 (W.D.N.Y. 2019) (stating that, for an excessive-force claim, the force used must be "more than *de minimis*" and noting that a plaintiff cannot state a claim merely because the officer "did not treat [him] as gently as [he] might have wished").

11

police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known.").

## V. § 1983 Claim for Municipal Liability

Scott's claim for municipal liability against the City also fails. In the complaint, Scott alleges, *inter alia*, that the City improperly investigates citizen complaints about police misconduct, inadequately supervises and trains its police officers, and maintains policies exhibiting "deliberate indifference to the constitutional rights of persons in Rochester." ECF No. 37 at 9. But Scott has failed to present any evidence to substantiate this claim on summary judgment. It is well-established that a municipality may not be "held liable under § 1983 solely because it employs a tortfeasor." *Bowen v. Cty. of Westchester*, 706 F. Supp. 2d 475, 483-84 (S.D.N.Y. 2010). Instead, a plaintiff must show that "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 483 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Because Scott fails to present any evidence to support this claim, the City is entitled to judgment as a matter of law. *See Raphael v. Cty. of Nassau*, 387 F. Supp. 2d 127, 132 (E.D.N.Y. 2005) (granting summary judgment where plaintiffs "presented no evidence whatsoever regarding a custom or policy" on the part of the municipality).

## VI. State-Law Claims for Battery, Assault, and Intentional Infliction of Emotional Distress

The only remaining claims are Scott's state-law claims for battery, assault, and intentional infliction of emotional distress against Officers Patrick and Samuel Giancursio. As a result, there arises a threshold jurisdictional issue. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over claims where, as here, it has "dismissed all claims over

which it has original jurisdiction." In evaluating whether to dismiss supplemental claims, a court balances the "traditional values of judicial economy, convenience, fairness, and comity." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (internal quotation marks omitted). Generally, when federal-law claims are "eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (internal ellipses omitted).

Having considered the factors, the Court discerns no exceptional circumstance that would distinguish this case from the "usual case" where a district court should decline to exercise jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The issues presented in Scott's remaining claims implicate no federal policy concerns and since discovery is complete "the parties are equipped to present [those] question[s] to a state court expeditiously." *Martin v. Sprint United Mgmt. Co.*, No. 15 Civ. 5237, 2017 WL 5028621, at *4 (S.D.N.Y. Oct. 31, 2017).

Nevertheless, the Second Circuit has cautioned that state-law claims should not be dismissed without giving the parties notice and an opportunity to be heard. *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) ("Hearing from the parties . . . is typically an essential component of the inquiry into whether to decline to exercise supplemental jurisdiction . . . ."). Accordingly, if they would like to do so, the parties have until September 6, 2019 to submit briefs up to five pages in length on the issue of supplemental jurisdiction. In the absence of any submissions, the Court will dismiss the remaining claims without prejudice in accordance with the above analysis.

Therefore, Defendants' motion for summary judgment is denied without prejudice with respect to the state-law claims against Officers Patrick and Samuel Giancursio. The Court will

consider the merits of Defendants' motion if it is persuaded, after briefing, that it should exercise supplemental jurisdiction in this case.

## CONCLUSION

Defendants' motion for summary judgment (ECF No. 13) is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE, in that Defendants are entitled to judgment as a matter of law on all claims except the state-law claims against Officers Patrick and Samuel Giancursio. By September 6, 2019, the parties may, but are not required to, submit briefs up to five pages in length on the issue of supplemental jurisdiction. The Clerk of Court is directed to dismiss all defendants but Patrick Giancursio and Samuel Giancursio from this case.

IT IS SO ORDERED.

Dated: August 23, 2019
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court